## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** : | |
| : | |
| : | **Case No. 1:07-cv-02757** |
| **Plaintiff,** : | |
| : | |
| **v.** : | |
| : | |
| **BRIAN E. HAYLOR,** : | |
| : | |
| **Defendant.** : | |

## COMPLAINT

Plaintiff, the Securities and Exchange Commission ("Commission"), alleges as follows:

## NATURE OF THE ACTION

1.      The defendant, Brian E. Haylor ("Haylor"), recorded materially false and inaccurate accounting entries and failed to record other entries he was required to make when he was an employee of Ferro Corporation ("Ferro"), a public company.  As a result, Ferro overstated its operating income in its periodic filings with the Commission for 2003 and the first quarter of 2004.

2.      Haylor, directly or indirectly, engaged in and unless restrained and enjoined by this Court will continue to engage in, transactions, acts, practices, and courses of business which violate Sections 10(b) and 13(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act")

[15 U.S.C. §§ 78j(b) and 78m(b)(5)] and Rules 10b-5 and 13b2-1 thereunder [17 C.F.R. 240.10b-5 and 240.13b2-1].

3.      Haylor also, directly or indirectly, aided and abetted and unless restrained and enjoined by this Court will continue to aid and abet transactions, acts, practices, and courses of business which violate Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 12b-20, 13a-1 and 13a-13 thereunder [17 C.F.R. 240.12b-20, 240.13a-1 and 240.13a-13].

4.      The Commission brings this action to enjoin such transactions, acts, practices and courses of business pursuant to Sections 20(e), 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78t(e), 78u(d) and 78u(e)].

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

6.      Venue is proper in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. §78aa].  Haylor is a resident of Ohio.  The acts, practices and courses of business constituting the violations alleged herein have occurred within the jurisdiction for the United States District Court for the Northern District of Ohio and elsewhere.

## DEFENDANT

7.      Haylor is 39 years old and a resident of Avon, Ohio.  From November 2000 until his resignation in June 2004, Haylor served as the division controller for Ferro's Polymer Additives Division ("PAD").

## THE ISSUER

8.      Ferro is an Ohio corporation with its principal place of business in Cleveland,

Ohio.  Ferro manufactures, among other things, performance chemicals at facilities in the U.S.

and in foreign countries.  Ferro's common stock is registered pursuant to Section 12(b) of the

Exchange Act and trades on the New York Stock Exchange.

## FACTS

### Haylor's Fraudulent Conduct

9.      Haylor intentionally recorded false entries and failed to record entries he was

required to make in PAD's accounting records from at least March 2003 until his resignation

from Ferro in June 2004.  Haylor's conduct involved several accounts, including temporary

accounts receivable, inventory, consignments and unrecorded liabilities.

10.      Haylor made false entries in an account known as temporary accounts receivable.

Haylor should have used the temporary accounts receivable account to record sales for items sold

and shipped to a customer, but for which Ferro had not issued an invoice.  Once Ferro issued the

invoice, Haylor should have eliminated the entry to temporary accounts receivable and

transferred the balance to trade accounts receivable.

11.      Haylor admitted that he recorded fictitious entries to increase temporary accounts

receivable and corresponding entries to reduce expenses.  Haylor's conduct resulted in an

increase in operating income of $1,050,000 in the first quarter of 2003, $527,000 in the second

quarter, and $123,000 in the third quarter.

12.      Haylor made false accounting entries in an account known as unrecorded

liabilities.  This account is the mirror image of temporary accounts receivable because it reflects

amounts owed by Ferro for which it has not yet received an invoice.  Haylor reduced this account

by $120,000 in the third quarter of 2003 and by $300,000 in the fourth quarter of 2003, which resulted in a reduction of Ferro's expenses on its income statement.  Haylor did not have any legitimate reason for these entries and no documentation to support them.

13.     Haylor often made the false entries in the first three days of the month, when Ferro's accounting system permitted manual adjusting entries to be made to account balances as of the end of the previous month.  Haylor did not tell his supervisor about his entries.  He provided to Ferro's independent auditors at least one false document that he prepared to conceal his conduct.

**Haylor's Erroneous Conduct**

14.     In addition to his fraudulent conduct, Haylor made accounting mistakes.  His erroneous conduct involved several accounts, including an accrual account.

15.     In July 2003, PAD sold products to a customer under a 12-month contract.  By the terms of the contract, the customer could earn rebates if its purchase volume exceeded certain levels.  From August 2003 through March 2004, Haylor did not accrue any rebate expenses.  In April 2004, Haylor learned that operations personnel estimated that the customer would, in fact, earn a rebate of $1.2 million.  Consistent with Generally Accepted Accounting Principles, Haylor should have immediately recorded ten months of rebate expenses and then accrued the remaining balance of the rebate in May and June of 2004. Haylor, in consultation with others, began recording the rebate expense in equal monthly installments on a basis that would have fully expensed the item over an eight month period to avoid having the entire $1.2 million expense appear in PAD's results for the second quarter of 2004.  Ferro corrected the erroneous entries when they were discovered after Haylor left Ferro in June 2004 and prior to filling its quarterly report for the second quarter of 2004.

- 4 -

**Ferro's Discovery of Haylor's Conduct**

16.     In March of 2004, Ferro's new Director of Corporate Accounting noticed unusual balances in some of PAD's accounts, such as slow-moving inventory and unrecorded liabilities. He tracked the balances over the next two months.  In early June, he noticed the large balance in temporary accounts receivable.  In response to questions about the account balance, Haylor's supervisor asked Haylor to prepare a reconciliation of the account.  Haylor did not prepare the reconciliation and failed to appear for work the following day.  He resigned shortly thereafter without ever returning to Ferro.  Ferro then conducted an investigation and discovered Haylor's fraudulent and erroneous conduct.

**Ferro's Restatement**

17.     On March 31, 2006, Ferro filed its annual report for 2004 with the Commission on Form 10-K, which contained restated financial results for 2003 and the first quarter of 2004. The restatement corrected fraudulent and erroneous account balances attributable to Haylor's conduct and erroneous account balances attributable to mistakes made by accountants in other divisions.

18.     Ferro's restatement had a material effect on the company's operating income for 2003 and the first quarter of 2004, as demonstrated in the following chart:

| (All Dollar Amounts in Millions) | 2003 | | | | | 2004 | Total |
|---|---|---|---|---|---|---|---|
| | Qtr 1 | Qtr 2 | Qtr 3 | Qtr 4 | Total | Qtr 1 | All Periods |
| Previously Reported Operating Income | $14.2 | $7.5 | ($1.1) | $3.6 | $24.2 | $19.3 | $43.5 |
| Less: Adj. for Fraudulent Accounting | ($3.5) | ($1.1) | ($0.1) | ($0.3) | ($5.0) | ($0.7) | ($5.7) |
| Adj. for Accounting Errors | ($2.8) | ($3.4) | ($0.8) | $0.4 | ($6.6) | ($4.6) | ($11.2) |
| Total Adjustments | ($6.3) | ($4.5) | ($0.9) | $0.1 | ($11.6) | ($5.3) | ($16.9) |
| Operating Income as Adjusted | $7.9 | $3.0 | ($2.0) | $3.7 | $12.6 | $14.0 | $26.6 |
| Over (Under)statement as a % of Oper. Inc. | 79.7% | 150.0% | 45.0% | (2.70%) | 92.1% | 37.9% | 63.5% |

## COUNT I

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5]**

19.      Paragraphs 1 through 18 are realleged and incorporated herein by reference.

20.      From at least March 2003 through June 2004, Haylor, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly:  used and employed devices, schemes and artifices to defraud; made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices and courses of business which operated or would have operated as a fraud and deceit upon purchasers and sellers and prospective purchaser and sellers of securities.

21.      Haylor knew or was reckless in not knowing the alleged facts and circumstances.

22.      As a result of the alleged conduct, Defendant Haylor violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

## COUNT II

**Aiding and Abetting Violations of Sections 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1 and 13a-13 thereunder [17 C.F.R. 240.12b-20, 240.13a-1 and 13a-13]**

23.      Paragraphs 1 through 18 are realleged and incorporated herein by reference.

24.      Ferro filed with the Commission financial statements in its annual report on Form 10-K for 2003 and quarterly reports on Form 10-Q for the first three quarters of 2003 and the first quarter of 2004 that were materially inaccurate.

25.     Ferro also filed with the Commission an annual report on Form 10-K and quarterly reports on Form 10-Q that were not in accordance with such rules and regulations that the Commission has prescribed as necessary and appropriate in the public interest and for the protection of investors, and also failed to include in those reports such further material information as was necessary to make the required statements, in light of the circumstances under which they were made, not misleading.

26.     As a result, Ferro violated Sections 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1 and 13a-13 thereunder [17 C.F.R. 240.12b-20, 240.13a-1 and 13a-13].

27.     Defendant Haylor knowingly provided substantial assistance to Ferro in its violations of Sections 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1 and 13a-13 thereunder [17 C.F.R. 240.12b-20, 240.13a-1 and 13a-13] and thereby aided and abetted Ferro's violations of these provisions of the federal securities laws.

### COUNT III

**Aiding and Abetting Violations of Section 13(b)(2)(A) and
13(b)(2)(B) [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)] of
the Exchange Act**

28.     Paragraphs 1 through 18 are realleged and incorporated herein by reference.

29.     From at least March 2003 through June 2004, Ferro failed to make and keep books, records and accounts, which in reasonable detail accurately and fairly reflected the transactions and disposition of Ferro's assets.

30.     From at least March 2003 through June 2004, Ferro failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that

transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP or any other criteria applicable to such statements.

31.     As a result, Ferro violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

32.     Defendant Haylor knowingly provided substantial assistance to Ferro in its violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)] and thereby aided and abetted Ferro's violations of these provisions of the federal securities laws.

## COUNT IV

### Violations of Exchange Act Rule 13b2-1 [17 C.F.R. 240.13b2-1]

33.     Paragraphs 1 through 18 are realleged and incorporated herein by reference.

34.     From at least March 2003 through June 2004, Haylor, directly and indirectly, falsified or caused to be falsified books, records and accounts subject to Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

35.     As a result, Defendant Haylor violated Rule 13b2-1 of the Exchange Act [17 C.F.R. § 240.13b2-1].

## COUNT V

### Violations of Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)]

36.     Paragraphs 1 through 18 are realleged and incorporated herein by reference.

37.     From at least March 2003 through June 2004, Haylor knowingly circumvented or knowingly failed to implement a system of internal accounting controls or knowingly falsified books, records and accounts described in Section 13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)].

38.     As a result, Defendant Haylor violated Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)].

## **RELIEF REQUESTED**

**WHEREFORE**, the Commission respectfully requests that the Court:

### **I.**

Issue findings of fact and conclusions of law that the Defendant Haylor committed the violations charged and alleged herein.

### **II.**

Issue an Order of Permanent Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining Defendant Haylor from, directly or indirectly, engaging in the acts, practices or courses of business alleged above, or in conduct of similar purport and object, as a principal or aider and abettor, in violation of Sections 10(b), 13(a), 13(b)(2)(A), 13(b)(2)(B) and 13(b)(5) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A), 78m(b)(2)(B) and 78m(b)(5)] and Rules 10b-5, 12b-20, 13a-1, 13a-13 and 13b2-1 thereunder [17 C.F.R. 240.10b-5, 240.12b-20, 240.13a-1, 240.13a-13 and 240.13b2-1].

### **III.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**IV.**

Grant Orders for such further relief as the Court may deem appropriate.

Respectfully submitted,


S / Jerrold H.  Kohn _____
Jerrold H. Kohn, Illinois Bar No. 6188085
Thomas J. Meier, Illinois Bar No. 6225621
Paul A. Montoya, Illinois Bar No. 6229890

Attorneys for Plaintiff
Securities and Exchange Commission
175 West Jackson Boulevard, Suite 900
Chicago, IL 60604-2615
(312) 353-7390

Dated:  September 12, 2007